# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0635V

| | |
|---|---|
| RONALD JOHNK, | Chief Special Master Corcoran |
| Petitioner, | Filed: August 28, 2023 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Laura Levenberg,* Muller Brazil PA, Dresher, PA, for Petitioner.

*Jennifer A. Shah,* U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION DISMISSING CASE[1]

On January 12, 2021, Ronald Johnk filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving the influenza ("flu") vaccine on November 29, 2019. Petition at 1, ¶¶ 1, 10; Exhibit 2 at ¶ 3 (Petitioner's affidavit).

I hereby DENY entitlement in this case, because Petitioner cannot preponderantly established that he suffered the residual effects of his alleged SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month requirement).

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

### I.  Relevant Procedural History

Along with the Petition, Mr. Johnk filed an affidavit and some of medical records required under the Vaccine Act. Exhibits 1-7, ECF No. 1; *see* Section 11(c). Approximately one month later, he filed additional medical records. Exhibits 8-10, ECF No. 6. On April 16, 2021, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 9.

Over the subsequent eight-month period, Petitioner filed medical records from his urologist and cardiologist, and a signed declaration[3] to supplement his previously-filed affidavit. Exhibits 11-13, ECF Nos. 13, 16, 18. In the declaration, Petitioner addressed the treatment he received and duration of his injury, including the lack of any mention of right shoulder pain when seen by his primary care provider ("PCP") in June 2020. Exhibit 13.

On July 1, 2022, Respondent filed his Rule 4(c) Report, opposing compensation in this case. ECF 24. Specifically, Respondent asserts that "Petitioner has failed to establish entitlement to compensation, because the record does not demonstrate he suffered the residual effects of his alleged right-sided SIRVA injury for more than six months after the November 29, 2019 vaccination." *Id.* at 6.

After determining that the existing record was not supportive of the severity component of his claim, I ordered Petitioner to file briefing and additional preponderant evidence to establish that he suffered the residual effects of his alleged SIRVA injury for more than six months. Order to Show Cause, issued Mar. 7, 2023, at 5-6, ECF No. 26. In response, Petitioner offered a brief arguing that he has provided sufficient evidence of severity and is entitled to compensation under a Table SIRVA claim, or, in the alternative, a causation-in-fact claim. ECF No. 27.

The matter is now ripe for adjudication.

### II.  Applicable Legal Standards

As stated by Congress when amending the Vaccine Act in 1987, the six-month severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–373. The only exception is an alternative added in 2000 - a showing that the vaccine injury required inpatient

---

[3] The declaration was not notarized or signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Exhibit 13 at 2.

hospitalization and surgical intervention. *Children's Health Act of 2000*, Pub. L. No. 106–310, § 1701, 114 Stat. 1101, 1151 (2000) (codified as amended at Section 11(c)(1)(D)(iii)). This exception was principally added to allow compensation in intussusception cases which often required surgical intervention but then resolved in less than six months, although it has also been invoked in the context of other injuries. *Id.*

### III.    Relevant Factual History

Prior to receiving the flu vaccine on November 29, 2019, Mr. Johnk (who was 71 at the time) suffered from common illnesses and conditions, including arthritis – joint pain. Exhibit 3 at 26-101. He complained of right shoulder pain on November 15, 2016 (*id.* at 67-68); left shoulder, hip, and buttock pain throughout 2017 (*id.* at 48, 59, 62, 64); right and left knee pain beginning in late 2017 (*id.* at 48); and left-sided facial/headache pain in June 2019 (*id.* at 30). Joint pain or arthritis was listed as an ongoing issue in all Petitioner's medical records from his PCP. *See generally* Exhibit 3. To address his joint and headache pain, Petitioner would take Celebrex,[4] Flexeril,[5] and Tramadol.[6] Exhibit 3 at 54, 59. Petitioner also suffered from common illnesses and conditions such as gastrointestinal reflux disease ("GERD"), insomnia, depression, abdominal pain, and a foot rash. *Id.* at 26-101.

On November 29, 2019, Petitioner received the flu vaccine in his right deltoid. Exhibit 1 at 4-5. Eleven days later (on December 10th) he visited his PCP complaining of right shoulder pain. Exhibit 3 at 22. Indicating that he believed the vaccination was administered too high - close to his shoulder joint rather than in the deltoid - Petitioner described aching pain in his entire right arm that began around six or seven that evening and numbness and tingling which traveled down into his right hand. *Id.* Upon examination, he was noted to have pain but full range of motion ("ROM"). *Id.* at 23. Petitioner's PCP diagnosed him with right shoulder pain following vaccination, prescribed Tramadol in addition to the Celebrax he already was taking, and informed him an orthopedist he had consulted indicated he should attempt to maintain his mobility and allow several weeks for his recovery. *Id.* at 24.

---

[4] Celebrex is the commonly used brand name for Celecoxib – medication "used to relieve some symptoms caused by arthritis, such as inflammation, swelling, stiffness, and joint pain. . . . [It] does not cure arthritis and will help you only as long as you continue to take it." https://www.hopkinsarthritis.org/patient-corner/drug-information/celecoxib-celebrex/ (last visited Mar. 6, 2023)

[5] Flexeril is a brand name for cyclobenzaprine –medication "used to help relax certain muscles in your body. It helps relieve pain, stiffness, and discomfort caused by strains, sprains, or injuries to your muscles." https://www.mayoclinic.org/drugs-supplements/cyclobenzaprine-oral-route/ (last visited Mar. 6, 2023).

[6] Tramadol is used to relieve moderate to moderately severe pain, including pain after surgery." https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description (last visited Mar. 6, 2023).

Approximately two weeks later, Petitioner returned to his PCP, complaining of a continued dull ache in his right shoulder since vaccination, along with numbness in his right hand. Exhibit 3 at 21. He was referred to the orthopedist who his PCP previously consulted. *Id.* at 19.

Seen by this orthopedist on January 21, 2020, Petitioner reported that he was unable to raise his arm after receiving the flu vaccination in November, and was taking Tramadol for the pain. Exhibit 4 at 3. Upon examination, he exhibited intact strength, tenderness upon palpitation, and mild right shoulder pain upon elevation. *Id.* at 4. Petitioner was diagnosed with bicipital tendinitis, offered a steroid injection which he indicated he would consider, and instructed to begin a home exercise program ("HEP"). *Id.* The orthopedist instructed Petitioner to return in one month for a follow-up appointment. *Id.*

In his supplemental affidavit, Petitioner indicated that he was not interested in the steroid injection offered by the orthopedist, and he canceled the follow-up appointment because the HEP was helping. Exhibit 13 at ¶¶ 3-4. When seen by his PCP on June 2, 2020, for a physical, Petitioner did not mention any right shoulder pain. Exhibit 3 at 13-14. In contrast, conditions such GERD, constipation, abdominal pain, and right knee pain were discussed. *Id.* He was instructed to return in three months. *Id.* at 14. Petitioner acknowledges that he must not have been experiencing pain at that time, but insists he continued to experience right shoulder pain prior to and after that visit. Exhibit 13 at ¶ 5.

At his follow-up PCP appointment on September 1, 2020, Petitioner discussed his plan to see the cariologist later that month, his concern related to diabetes which runs in his family, and the abdominal pain he experienced after drinking Pepsi. Exhibit 3 at 9. He also reported experiencing a stabbing pain for ten minutes in his right shoulder, arm, and down to his hand when sitting in his recliner, watching TV, about four weeks ago – placing the event in early August 2020. Although the pain had recurred at the time, he stated that he "still can feel a dull pain in his [right] shoulder." *Id.* Characterizing the pain as sudden, he indicated his shoulder, arm and down to his hand simply "*started* to ache." *Id.*

When describing this pain, Petitioner did not indicate that it was part of an ongoing issue or linked to the flu vaccine he received the previous year. Exhibit 3 at 9. However, the PCP did so when he diagnosed Petitioner with joint pain, including "R shoulder pain that started last year after his flu injection" under the list of diagnoses. *Id.* at 11. Noting that Petitioner's musculoskeletal examination was normal and annotating only slight edema in the legs under "EXTREMITIES," the PCP prescribed Celebrex for Petitioner's pain. *Id.* at 10-11.

Petitioner did not seek treatment for or complain of right shoulder pain after this visit. There is no mention of right shoulder pain in the medical records from two visits to the cardiologist in September 2020. Exhibit 9 at 256-312.

### IV.     Analysis Regarding Severity

The medical records establish that Petitioner experienced right shoulder pain - primarily when raising his right arm - for approximately two months following vaccination. Exhibit 3 at 19-24; Exhibit 4 at 3-4. He obtained enough relief from the HEP (begun after his only orthopedic appointment in late January) to warrant cancelation of the follow-up orthopedic appointment, scheduled in late February 2020. Exhibit 13 at ¶¶ 3-4. This canceled appointment would have occurred approximately three months post-vaccination. When seen by his PCP in June 2020 – now slightly more than six months post-vaccination - Petitioner failed to report any right shoulder pain. Exhibit 3 at 13-14. And, in his affidavit, as well as the response to my order to show cause issued on March 7, 2023, Petitioner acknowledged he likely was not experiencing pain at that time. Exhibit 13 at ¶ 5; Petitioner's Brief in Response to Order to Show Cause ("Response") at 13.

When Petitioner next complained of right shoulder pain (in September 2020), he described it as beginning suddenly, four weeks earlier, lasting only ten minutes, and not occurring again – although a residual ache remained. Exhibit 3 at 9. More importantly, he did not mention any ongoing, abet intermittent, prior pain since vaccination. Instead, he appeared to be describing a new condition. *Id.* The first time Petitioner reported experiencing intermittent and continuing pain during the more than seven-month period between late January to September 2020, was in his declaration and response during this vaccine proceeding – and thus this is not reflected in a contemporaneous record. *See* Exhibit 13 at ¶ 5; Response at 12-13.

Although Petitioner's PCP connected the pain reported in September 2020 to that experienced post-vaccination, there is nothing to show the basis for this conclusion, and it may simply reflect Petitioner's own statements, or be based on the PCP's familiarity with Petitioner's prior pain, or after reviewing records from Petitioner's earlier visits. Petitioner was allowed time to supplement the record, for example, by obtaining an additional statement from Petitioner's PCP to further explain this diagnosis, but failed to do so. Regardless – it is only a *single* entry in the records.

Petitioner unpersuasively maintains that this one reference is sufficient to support his assertion of continuing symptoms during this more than seven-month gap in treatment, and to counter the lack of any mention of shoulder issues at the one PCP visit during that time. Rather, the entire record in this case – including Petitioner's prior and well-documented joint pain which included his right shoulder, the mildness of the

5

symptoms Petitioner reported for only a few months post-vaccination (noted to be improving), and lack of reported symptoms until more than seven months thereafter – far more preponderantly suggests that pain experienced by Petitioner for ten minutes in early August 2020 was *not related* to the vaccine he received in late 2019. I thus find that Petitioner has not provided sufficient evidence to link this sudden, stabbing, and temporary pain, or the dull ache which followed thereafter, to his earlier right shoulder pain.

Accordingly, the record does not support Petitioner's assertions that the right shoulder pain he experienced post-vaccination *also* continued for at least six months, or that the temporary stabbing pain he experienced August 2020, which continued to manifest as a dull ache into September, was related to his earlier pain. This inability to satisfy the six-month severity requirement is fatal to the Petitioner's claim.

## Conclusion

The Vaccine Act prohibits me from finding a petitioner entitled to compensation based upon the petitioner's claims alone. Section 13(a). To date, and despite ample opportunity, Petitioner has failed to provide preponderant evidence that he suffered the residual effects of his injury for more than six months or suffered an in hospital surgical intervention. Section 11(c)(1)(D).

Petitioner was informed that failure to provide preponderant to satisfy the Vaccine Act's severity requirement would be treated as either a failure to prosecute this claim or as an inability to provide supporting documentation for this claim. Accordingly, this case is DISMISSED for insufficient evidence. The Clerk of Court shall enter judgment accordingly.[7]

**IT IS SO ORDERED.**

    **s/Brian H. Corcoran**
    Brian H. Corcoran
    Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.