# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0635V

| | |
|---|---|
| RONALD JOHNK,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: January 21, 2025 |

*Laura Levenberg*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Meghan Murphy*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEY'S FEES AND COSTS[1]

On January 12, 2021, Ronald Johnk filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving the influenza ("flu") vaccine on November 29, 2019. Petition at 1, ¶¶ 1, 10.

The case was dismissed, and Petitioner has now moved for a final award of fees. However, for the reasons set forth below, I find that Petitioner has failed to establish reasonable basis in this claim. Thus, he is not entitled to an award of attorney's fees and costs, and the fees motion is denied.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

I.      **Relevant Procedural History**

Based on a review of the record, I informed Petitioner that the claim could not likely meet the Act's severity requirement, but allowed him the opportunity to identify additional evidence that might rectify this deficiency. ECF No. 26; *see* Section 11(c)(1)(D)(i) (severity requirement). After considering the additionally-submitted evidence and argument provided by Petitioner, and I dismissed the claim on August 28, 2023. ECF No. 28.

On December 14, 2023, Petitioner filed a request for an award of $11,196.10 in attorney's fees and costs. Petitioner's Application for Attorneys' Fees and Costs ("Motion") at ¶ 4, ECF No. 32. He did not address the statutory requirements of good faith and reasonable basis - prerequisites for any attorney's fees and costs award in unsuccessful cases. *See* Section 15(e)(1).

On January 11, 2024, Respondent filed a response, objecting to the payment of fees and costs because . . . a reasonable basis for this claim is lacking." Respondent's Response to Motion ("Response") at 1, ECF No. 34. Citing specific evidence (certain medical records entries) (*id.* at 7-9), he insists "there has never been any evidence supporting satisfaction of the severity requirement, [and] . . . the medical records . . . did not support the contention that the single incident of stabbing pain petitioner reported on September 1, 2020, was related to his vaccination more than nine months earlier" (*id.* at 9). Respondent argues that "although [P]etitioner has had an ample opportunity to fully develop the record, he has not met his burden to affirmatively demonstrate that there is more than a scintilla of objective evidence in the record in this case establishing a reasonable basis for his claim." *Id.*

On January 18, 2024, Petitioner filed a reply, "argu[ing] that a denial of attorneys' fees and costs in this case would be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Petitioner's Reply to Response at 1, ECF No. 35. Acknowledging that he had gaps in treatment including one medical appointment in June 2020, without any mention of shoulder pain, he maintains that the "September 1, 2020 appointment for right shoulder pain suggests that he continued to suffer lingering effects of his injury in the interim period - when he was not experiencing shoulder pain." *Id.* at 4-5. Petitioner argues that he "had a reasonable basis to file [his] claim, and had objective evidence to satisfy all elements of [his] *prima facie* claim." *Id.* at 5.

## II.      Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[3] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

---

[3] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) *("Cottingham II"), aff'd without op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

At issue here, Vaccine Act Section 11(c)(1)(D)(i) requires the establishment of an injury and residual effects lasting for over six months after the date of vaccination. This is a threshold requirement for entitlement. *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

### III.     Evidence Provided by Medical Records and Affidavits

Prior to receiving the flu vaccine on November 29, 2019, Mr. Johnk (who was 71 at the time) suffered from common illnesses and conditions, including arthritis – joint pain. Exhibit 3 at 26-101. He complained of right shoulder pain on November 15, 2016 (*id.* at 67-68); left shoulder, hip, and buttock pain throughout 2017 (*id.* at 48, 59, 62, 64); right and left knee pain beginning in late 2017 (*id.* at 48); and left-sided facial/headache pain in June 2019 (*id.* at 30). Joint pain or arthritis was listed as an ongoing issue in all Petitioner's medical records from his PCP. *See generally* Exhibit 3. To address his joint

4

and headache pain, Petitioner would take Celebrax,[4] Flexeril,[5] and Tramadol.[6] Exhibit 3 at 54, 59. Petitioner also suffered from common illnesses and conditions such as gastrointestinal reflux disease ("GERD"), insomnia, depression, abdominal pain, and a foot rash. *Id.* at 26-101.

On November 29, 2019, Petitioner received the flu vaccine in his right deltoid. Exhibit 1 at 4-5. Eleven days later (on December 10th) he visited his PCP complaining of right shoulder pain. Exhibit 3 at 22. Indicating that he believed the vaccination was administered too high - close to his shoulder joint rather than in the deltoid - Petitioner described aching pain in his entire right arm that began around six or seven that evening and numbness and tingling which traveled down into his right hand. *Id.* Upon examination, he was noted to have pain but full range of motion ("ROM"). *Id.* at 23. Petitioner's PCP diagnosed him with right shoulder pain following vaccination, prescribed Tramadol in addition to the Celebrax he already was taking, and informed him an orthopedist he had consulted indicated he should attempt to maintain his mobility and allow several weeks for his recovery. *Id.* at 24.

Approximately two weeks later, Petitioner returned to his PCP, complaining of a continued dull ache in his right shoulder since vaccination, along with numbness in his right hand. Exhibit 3 at 21. He was referred to the orthopedist who his PCP previously consulted. *Id.* at 19.

Seen by this orthopedist on January 21, 2020, Petitioner reported that he was unable to raise his arm after receiving the flu vaccination in November, and was taking Tramadol for the pain. Exhibit 4 at 3. Upon examination, he exhibited intact strength, tenderness upon palpitation, and mild right shoulder pain upon elevation. *Id.* at 4. Petitioner was diagnosed with bicipital tendinitis, offered a steroid injection which he indicated he would consider, and instructed to begin a home exercise program ("HEP"). *Id.* The orthopedist instructed Petitioner to return in one month for a follow-up appointment. *Id.* But the return visit was cancelled (and Petitioner maintains this was due to the relief provided by the steroid injection). Exhibit 13 at ¶¶ 3-4.

---

[4] Celebrex is the commonly used brand name for Celecoxib – medication "used to relieve some symptoms caused by arthritis, such as inflammation, swelling, stiffness, and joint pain. . . . [It] does not cure arthritis and will help you only as long as you continue to take it." https://www.hopkinsarthritis.org/patient-corner/drug-information/celecoxib-celebrex/ (last visited Mar. 6, 2023)

[5] Flexeril is a brand name for cyclobenzaprine –medication "used to help relax certain muscles in your body. It helps relieve pain, stiffness, and discomfort caused by strains, sprains, or injuries to your muscles." https://www.mayoclinic.org/drugs-supplements/cyclobenzaprine-oral-route/ (last visited Mar. 6, 2023).

[6] Tramadol is used to relieve moderate to moderately severe pain, including pain after surgery." https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description (last visited Mar. 6, 2023).

5

There is a subsequent four-plus months gap in treatment. When seen by his PCP on June 2, 2020, for a physical, Petitioner did not mention any right shoulder pain. Exhibit 3 at 13-14. In contrast, conditions such GERD, constipation, abdominal pain, and right knee pain were discussed. *Id.* He was instructed to return in three months. *Id.* at 14.

At a follow-up PCP appointment three months later, on September 1, 2020, Petitioner discussed his plan to see the cariologist later that month, his concern related to diabetes which runs in his family, and the abdominal pain he experienced after drinking Pepsi. Exhibit 3 at 9. He also reported experiencing a stabbing pain for ten minutes in his right shoulder, arm, and down to his hand when sitting in his recliner, watching TV, about four weeks ago – placing the event in early August 2020. Although the pain had recurred at the time, he stated that he "still can feel a dull pain in his [right] shoulder." *Id.* Characterizing the pain as sudden, he indicated his shoulder, arm and down to his hand simply "*started* to ache." *Id.* Multiple diagnoses (including one related to right shoulder joint pain) were listed in this record as follows:



*Id.* at 11. Noting that Petitioner's musculoskeletal examination was normal and annotating only slight edema in the legs under "EXTREMITIES," the PCP prescribed Celebrex for Petitioner's pain. *Id.* at 10-11.

Petitioner did not seek treatment for or complain of right shoulder pain after this visit. There is no mention of right shoulder pain in the medical records from two visits to the cardiologist in September 2020. Exhibit 9 at 256-312.

In a supplemental declaration, signed on December 14, 2021, Petitioner stated that he was not interested in the steroid injection offered by the orthopedist in January 2020, because he considered it "just a quick fix and not a solution." Exhibit 13 at ¶ 3. He added that he canceled the follow-up appointment scheduled for the following month the HEP was helping, but not eliminating his pain. *Id.* at ¶¶ 3-4. Petitioner acknowledged that he must not have been experiencing pain at the time of his June 2, 2020 physical since

6

he "didn't respond yes to the question of experiencing pain." Exhibit 13 at ¶ 5. However, he insists he continued to experience right shoulder pain prior to and after that visit. *Id.*

      **IV.**      **Analysis – Reasonable Basis**

The medical records clearly establish that Petitioner experienced right shoulder pain - primarily when raising his right arm - for approximately two months following vaccination. Exhibit 3 at 19-24; Exhibit 4 at 3-4. But he obtained enough relief from the HEP (begun after his only orthopedic appointment in late January) to warrant cancelation of the follow-up orthopedic appointment, scheduled in late February 2020. Exhibit 13 at ¶¶ 3-4. This canceled appointment would have occurred approximately three months post-vaccination. And when seen by his PCP in June 2020 – now slightly more than six months post-vaccination - Petitioner failed to report any right shoulder pain. Exhibit 3 at 13-14. In a supplemental declaration, as well as the response to my order to show cause issued on March 7, 2023, Petitioner acknowledged he likely was not experiencing pain at that time. Exhibit 13 at ¶ 5; Petitioner's Brief in Response to Order to Show Cause ("Response") at 13.

When Petitioner next complained of right shoulder pain (in September 2020), he described it as beginning suddenly, four weeks earlier, lasting only ten minutes, and not occurring again – although a residual ache remained. Exhibit 3 at 9. More importantly, he did not mention any ongoing, abet intermittent, prior pain since vaccination. Instead, he appeared to be describing a new condition. *Id.* The first time Petitioner reported experiencing intermittent and continuing pain during the more than seven-month period between late January to September 2020, was in his supplemental declaration - signed on December 14, 2021, and response during this vaccine proceeding – and thus this is not reflected in a contemporaneous record. *See* Exhibit 13 at ¶ 5; Response at 12-13.

The only objective evidence supporting Petitioner's assertion of ongoing right shoulder pain beyond three months post-vaccination is the inclusion of a diagnosis of right shoulder pain since vaccination in a list of nine diagnoses found in the medical record from Petitioner's September 1, 2020 PCP visit. Exhibit 3 at 11. However, that record contains no further explanation for the entry, nor any information attributing Petitioner's current symptoms – described as residual dull pain from a sudden, sharp pain, lasting ten minutes only, four weeks earlier (in August 2020), to this diagnosis. Petitioner was allowed time to supplement the record, for example, by obtaining an additional statement from Petitioner's PCP to further explain this diagnosis, but failed to do so.

7

Accordingly, the record in this case does not establish sufficient evidence of severity. And that evidence is so lacking that it even fails to meet the lower standard of reasonable basis. Thus, the claim was objectively untenable from the outset. This is not a case in which the development of a fact, out of ambiguous records, *later* revealed that a claim that initially appeared viable in fact was not. Under such circumstances, no fees award is appropriate, since counsel should have determined the lack of objective support for the claim before its filing.

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs to an unsuccessful litigant only where the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim. **Petitioner's motion for attorney's fees and costs is therefore DENIED.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[7]

**IT IS SO ORDERED.**

> **s/Brian H. Corcoran**
> Brian H. Corcoran
> Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.